CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED

May 29, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Kayla Lokey
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

In re Subpoena:                                  )        Case No. 3:26-mc-000006
The Board of Visitors for the                    )
University of Virginia                            )        MEMORANDUM OPINION &
                                                 )        ORDER
                                                 )
                                                 )        By:    Joel C. Hoppe
                                                 )               United States Magistrate Judge

This miscellaneous case relates to a civil action pending in the United States District

Court for the Eastern District of New York. *See Tarek El-Ghazaly, M.D. v. Jason Kim, M.D. et

al.*, No. 2:25cv3939-BMC (E.D.N.Y filed July 16, 2025) (Cogan, J.). Judge Cogan's operative

scheduling order in *El-Ghazaly* says "[f]act discovery will close 2/13/2026." *El-Ghazaly*, Order

of Dec. 10, 2025 ("No further extensions in light of plaintiff's prior abuse of the discovery

process."); *accord id.*, Order of Feb. 16, 2026 ("Discovery is reopened through 2/27/2026 for the

sole purpose of plaintiff taking [one nonparty] deposition."). He has not set a longer period for

filing discovery motions. *See, e.g., id.*, Order of Sept. 3, 2025; *id.*, Order of Dec. 10, 2025; *id.*,

Order of Jan. 21, 2026; *id.*, Order of Feb. 10, 2026. Plaintiff acknowledges that fact discovery in

*El-Ghazaly* closed on February 13, 2026. Pl.'s Reply 2–3, ECF No. 6.

On March 20, 2026, Plaintiff Tarek El-Ghazaly ("Dr. El-Ghazaly") served a Rule 45

subpoena *duces tecum* issued from E.D.N.Y. as part of that civil action. *See* Pl.'s Br. Ex. G, ECF

No. 2-1, at 39–43 ("March subpoena").[1] The March subpoena is directed to J. Scott Ballenger,

---

[1] The subpoena at issue is attached as Exhibit G to Dr. El-Ghazaly's opening brief. *See* Pl.'s Br. Ex. G,
ECF No. 2-1, at 39, 43. The briefs refer to this subpoena as the "Reissued Subpoena" and/or "SDT II"
because it is the second of two Rule 45 subpoenas *duces tecum* that Dr. El-Ghazaly directed to UVA's
Board of Visitors. *See generally* Pl.'s Br. 4–6, 9, 12, ECF No. 2; UVA's Resp. Br. 4–6, 8–9, 13, ECF No.
4; Pl.'s Reply 1–11. On February 13, 2026, a Virginia attorney served Dr. El-Ghazaly's "original
Subpoena," Pl.'s Br. 5, which issued from the U.S. District Court for the Western District of Virginia and
required UVA's officer to produce the requested documents at a law firm within the Eastern District of

Special Assistant to the President and Secretary of the Board of Visitors for the University of

Virginia ("UVA") in Charlottesville, Virginia. *See id.* at 39. UVA's Board of Visitors is not a

party to the E.D.N.Y action. Pl.'s Mot., ECF No. 1. The March subpoena seeks:

> 1.      Any and all documents related to Tarek El-Ghazaly, M.D., including, but
> not limited to, the application form, curriculum vitae, personal statement,
> transcripts, test scores, communications, and all supporting materials submitted by
> or on behalf of Dr. El-Ghazaly to the University of Virginia School of Medicine.

Pl.'s Br. Ex. G, ECF No. 2-1, at 43. It commands UVA's officer to produce those documents at

UVA's own "Records and Information Office" in Charlottesville by 5:00 p.m. on March 27,

2026. *See id.* at 39. UVA's counsel timely served its written objections to this subpoena. UVA's

Resp. Br. Ex. 4, Letter from A. Hensley to J. Norinsberg (Mar. 27, 2026), ECF No. 4-4, at 2–4;

*see* Fed. R. Civ. P. 45(d)(2)(B).

On April 7, Dr. El-Ghazaly moved this Court for an order compelling UVA's Board of

Visitors to comply with his March subpoena. *See* Pl.'s Mot. 1 (citing Fed. R. Civ. P. 37(a)(2),

45(d)(2)(B)(i)); Pl.'s Br. 9–12 ; Pl.'s Reply 5–8, 11. UVA opposes Dr. El-Ghazaly's motion for

the reasons stated in its response brief. *See generally* UVA's Resp. Br. 6–9 (the motion to

compel is untimely because it was filed after discovery closed); *id.* at 9–10 (the March subpoena

was untimely because it was issued, served, and required compliance after discovery closed); *id.*

at 10–12 (discussing the March subpoena's alleged form and content defects); *id.* at 12–13 (the

March subpoena's scope is overbroad and not proportional to the needs of the case); *id.* at 13–15

---

Virginia. Pl.'s Br. Ex. A, ECF No. 2-1, at 5, 9–10. *Contra* Fed. R. Civ. P. 45(a)(2) ("A subpoena must
issue from the court where the action is pending."). UVA's counsel timely objected to that subpoena. *See*
UVA's Resp. Br. Ex. 1, Letter from A. Hensly to J. Nader (Feb. 26, 2026), ECF No. 4-1, at 2–3; Fed. R.
Civ. P. 45(d)(2)(B). The February subpoena, or "SDT I," is attached as Exhibit A to Dr. El-Ghazaly's
opening brief. *See* UVA's Resp. Br. 2–4, 9; Pl.'s Reply 2–3, 6, 9; Pl.'s Ex. A, ECF No. 2-1, at 5–10. Dr.
El-Ghazaly's March subpoena is "substantively identical" to his February one. Pl.'s Br. 5. For clarity's
sake, I use "March subpoena" when referring to Plaintiff's Exhibit G, ECF No. 2-1, at 39, 43, and
"February subpoena" when referring to Plaintiff's Exhibit A, ECF No. 2-1, at 5, 9.

(the motion to compel lacks the required Rule 37(a) certification). No one requested a hearing.

Dr. El-Ghazaly's Motion to Compel, ECF No. 1, is before me by referral under 28 U.S.C. §

636(b)(1)(A). *See* Order, ECF No. 8.

## I. Summary

The Court **DENIES** Dr. El-Ghazaly's motion to compel for three reasons.[2] *First*, his

motion to compel is untimely because he filed it after discovery closed on February 13, 2026.[3]

*See* Fed. R. Civ. P. 16(b)(4). Dr. El-Ghazaly does not argue that Judge Cogan agreed to extend

the time within which Dr. El-Ghazaly could ask for a court's help enforcing his February

subpoena if, as ended up happening here, UVA timely objected to that demand. *See* Fed. R. Civ.

P. 45(d)(2)(B)(i)–(ii). His position that Judge Cogan "expressly" gave him "permission" to

enforce the substantively identical March subpoena against UVA—no matter what—is belied by

"Judge Cogan's [own] words on this issue," Pl.'s Reply 3.

*Second*, the March subpoena's command that UVA locate, review, and produce "any and

all documents related to" Dr. El-Ghazaly—including those already in his attorney's possession—

is overbroad and unduly burdensome on its face. *See* Fed. R. Civ. P. 45(d)(1). As such, enforcing

that command against nonparty UVA is disproportional to the needs of the E.D.N.Y. action. *See*

Fed. R. Civ. P. 26(b)(1)–(2); *cf. Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 190 (4th Cir. 2019)

---

[2] There is no reason to transfer Dr. El-Ghazaly's motion to compel to E.D.N.Y. under Rule 45(f). UVA's Board of Visitors does not consent to transfer, ECF No. 7, and its prevailing objections both to Dr. El-Ghazaly's motion and to the scope of the March subpoena are routine and straightforward. *See* Fed. R. Civ. P. 45(f); *Trump Media & Tech. Grp. Corp. v. WP Co.*, No. 5:26mc11, 2026 WL 698867, at *3 (E.D.N.C. Mar. 12, 2026).

[3] Dr. El-Ghazaly and UVA vigorously dispute whether the March *subpoena* was "timely" issued and served under Judge Cogan's scheduling order. *See generally* Pl.'s Br. 1, 4–5, 9–10, 12; UVA's Resp. Br. 1, 9–10; Pl.'s Reply 2–5; Fed. R. Civ. P. 45(a)–(d). As explained below, my reasons for denying Dr. El-Ghazaly's motion to compel are not related to the date on which his New York attorney issued or served the March subpoena. Accordingly, I take no position on that dispute.

("A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it.").

*Third*, Dr. El-Ghazaly's briefing seeks an order compelling UVA to produce a narrow category of documents—namely Dr. Kim's allegedly defamatory emails to the medical school—that the March subpoena, as written, does not require UVA to produce. *See* Fed. R. Civ. P. 34(c), 37(a), 45(a). The March subpoena demands any "communications[] and all supporting materials *submitted by or on behalf of Dr. El-Ghazaly* to the University of Virginia School of Medicine." Pl.'s Br. Ex. G, at 43 (emphasis added). A false statement that injures a person's reputation cannot reasonably be said to be made "on behalf of" that person. *Cf. El-Ghazaly v. Kim*, No. 2:25cv3939, 2026 WL 111732, at *8 (E.D.N.Y. Jan. 15, 2026) (Cogan, J.) (noting that Dr. El-Ghazaly's "stigma-plus claim" against Dr. Kim requires him to allege that Dr. Kim uttered "a statement about [Dr. El-Ghazaly] that is injurious to his reputation, that is capable of being proved false, and that [Dr. El-Ghazaly] claims is false" (cleaned up)). In short, Dr. El-Ghazaly never asked UVA's Board of Visitors to produce the documents at the heart of his motion to compel. *See* Fed. R. Civ. P. 34(c), 37(a)(3), 45. UVA therefore did not "fail[] to produce" them "as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(iv).

Dr. El-Ghazaly's motion to compel, ECF No. 1, will be denied for all these reasons.

## II. Legal Framework

A party to civil litigation "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Rule 26(b)(1) standard applies to "[a]ll civil discovery, whether sought from parties or nonparties." *Jordan*, 921 F.3d at 188. Under Rule 34, a "party may serve on any other party a request within the scope of Rule 26(b)[] to produce . . . any designated documents" in the

4

responding party's possession, custody, or control. *See* Fed. R. Civ. P. 34(a)(1)(A). "The request[] must describe with reasonable particularity each item or category of items" sought. Fed. R. Civ. P. 34(b)(1)(A). "As provided in Rule 45, a nonparty may be compelled to produce documents" sought by a subpoena duces tecum. Fed. R. Civ. P. 34(c); *see generally* Fed. R. Civ. P. 45(a)–(e). The "subpoena must[] command" a nonparty to "produce designated documents. . . in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). A nonparty has no obligation to produce documents not requested by the subpoena. *See generally* Fed. R. Civ. P. 45(a)(1)(D), (d)(1)–(3), (e)(1)–(2); *cf. Anderson v. Cent. Reserve Life Ins. Co.*, No. 3:08cv4011, 2010 WL 11652379, at *13 n.23 (D.S.C. May 13, 2020) (defendant "was under no obligation to volunteer information not requested (if, indeed, it was not requested)" in party discovery).

"On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). A motion to compel "production or inspection," specifically, "may be made if[] a party [or person] fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iv); *accord* Fed. R. Civ. P. 45(d)(2)(B)(i) ("At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."). "A motion for an order to a nonparty must be made in the court where the discovery is or will be taken." Fed. R. Civ. P. 37(a)(2). This includes a party's motion under Rule 45(d) to enforce its subpoena *duces tecum* against a nonparty or its officer where, as here, the nonparty timely objected to that subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B)(i). "[T]he party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." *Kinetic Concepts, Inc. v. ConvaTec, Inc.*, 268 F.R.D. 226, 243 (D. Md. 2010). District courts have broad discretion in

5

determining "whether to grant or deny a motion to compel." *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*, 43 F.3d 922, 929 (4th Cir. 1995)).

### III. Discussion

#### A.    The Motion to Compel is Untimely

Dr. El-Ghazaly brings his motion to compel under Rule 37(a)(2) and Rule 45(d)(2)(B)(i). Neither rule sets a time limit for filing such motions. *See PCS Phosphate Co., Inc. v. Norfolk S. Corp.*, 238 F.R.D. 555, 558 (E.D.N.C. 2006) (Rule 37); *Crete Carrier Corp. v. Sullivan & Sons, Inc.*, Civ. No. ELH-21-328, 2022 WL 1203652, at \*20–21 (D. Md. April 21, 2022) (Rule 45). Unless the judge's scheduling order sets a longer period, however, motions to compel filed after the discovery deadline are generally deemed untimely. *See Reed v. Beverly Hills Porsche*, No. 6:17cv59, 2018 WL 10396251, at \*1 (W.D. Jan. 12, 2018) (Rule 37); *Crete Carrier Corp.*, 2022 WL 1203652, at \*20–21 (Rule 45); *Owen v. No Parking Today, Inc.*, 280 F.R.D. 106, 112 (S.D.N.Y. 2011) (Rule 37); Fed. R. Civ. P. 16(b)(3) ("[T]he scheduling order must limit the time to . . . complete discovery" and "may . . . include other appropriate matters"). "And, untimeliness is sufficient ground, standing alone, to deny a discovery motion." *Crete Carrier Corp.*, 2022 WL 1203652, at \*21 (cleaned up); *accord Owen*, 280 F.R.D. at 112–13.

Discovery closed in the *El-Ghazaly* action closed on February 13, 2026. None of Judge Cogan's scheduling orders set a different deadline for filing discovery motions. *See, e.g.*, *El-Ghazaly*, Order of Sept. 3, 2025; *id.*, Order of Dec. 10, 2025. Thus, I agree with UVA's argument that Dr. El-Ghazaly filing this motion to compel seven weeks after discovery closed, without more, is reason enough for this Court to deny it. Dr. El-Ghazaly does not argue otherwise. In fact, his reply brief does not respond to this argument at all. *Compare* UVA's Resp.

6

Br. 6–9 (arguing that Dr. El-Ghazaly's April 7, 2026 *motion to compel* is untimely), *with* Pl.'s Reply 2–4 (arguing that his February and March *subpoenas* were timely issued and served). His failure to respond concedes the point. *Cf. Intercarrier Comm'cns v. Kik Interactive, Inc.*, No. 3:12cv771, 2013 WL 4061259, at *3 (E.D. Va. Aug. 9, 2013) (noting that a party that "does not respond" to a specific argument "effectively concede[s]" the issue).

At most, Dr. El-Ghazaly points out that "Rule 16 . . . *permits* a party to receive an extension in modifying a scheduling order with a showing of 'good cause and with the judge's consent.'" Pl.'s Br. 10 (quoting Fed. R. Civ. P. 16(b)(4) (emphasis added)). Rule 16(b)(3) "deadlines, including those related to a motion to compel may be modified 'for good cause and with the judge's consent.'" Pl.'s Reply 2 (quoting Fed. R. Civ. P. 16(b)(4) (emphasis omitted)). "And good cause *can be demonstrated* by the party's diligence in seeking the discovery" *before* discovery closed even if the party's subpoena requires a nonparty to comply *after* that deadline expired. *See* Pl.'s Br. 10–11 (emphasis added) (citing cases applying Rule 16(b)(4)'s good cause standard to motions to compel filed after the discovery deadline).

However, Dr. El-Ghazaly has not sought, much less secured, Judge Cogan's consent to modify his scheduling order in a way that permits this untimely discovery venture. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule *may be* modified *only* for good cause *and* with the judge's consent.") (emphasis added). Fact discovery closed on February 13. While Dr. El-Ghazaly could choose some later date by which UVA must comply with his subpoena, he "d[id] so at the risk" that a court would "not entertain a motion to compel" over events that happened after Judge Cogan's "established deadline to complete discovery," *Reed*, 2018 WL 10396251, at *1 (motion to compel party discovery). *See, e.g.*, *DE Techs., Inc. v. Dell, Inc.*, 238 F.R.D. 561, 567 (W.D. Va. 2006) (denying party's motion to enforce its Rule 45 deposition subpoena as untimely where

7

that party "did not seek the court's assistance in any way in an effort to obtain this third-party deposition before the discovery deadline").

Dr. El-Ghazaly does not try to show that he "diligently" sought any information from UVA before February 13. *See generally* Pl.'s Br. 9–12; Pl.'s Reply 1–11. Nor could he. *See* Pl.'s Br. Ex. C, Mot. Hr'g Tr. 7–12 (Feb. 24, 2026), ECF No. 2-1, at 21–26. During a motion hearing on February 24, for example, Judge Cogan asked Mr. Norinsberg why the February subpoena was "served so late in the process[.]" Mot. Hr'g Tr. 8. Mr. Norinsberg explained that he "got involved in this case about two weeks" earlier and "realized this was a loose end that had not been covered by [his] team" only after he fully reviewed the case file. *Id.* ("That's really what happened, Judge. Nothing more complex than that."). Judge Cogan recognized Mr. Norinsberg's candor, but also made clear that Dr. El-Ghazaly's legal team "can't avoid its responsibility by shifting attorneys on the case[.]" *Id.* at 9. Mr. Norinsberg responded, "Most definitely, Judge. It is embarrassing the way the discovery has been handled. You've sanctioned us. It was warranted . . . . Honestly, what you're seeing is the residual effects of a poorly managed case." *Id.* Dr. El-Ghazaly's attorney concedes that he was not diligent and, as such, cannot show good cause for his failure to file this motion to compel before Judge Cogan's discovery deadline expired. *Cf. Arnold v. Krause, Inc.*, 232 F.R.D. 58, 67 (W.D.N.Y. 2004) (finding no good cause to modify the scheduling order where plaintiff's "counsel concede[d] he did not carefully read" the information available to him); *K-VA-T Food Stores, Inc. v. Hutchins*, 872 F. Supp. 2d 486, 492 (W.D. Va. 2012) (denying motion to compel as untimely where counsel "offered no explanation" why he served requests so close to the discovery deadline).

Moreover, on February 24, UVA still had two days to object to Dr. El-Ghazaly's February subpoena. Fed. R. Civ. P. 45(d)(2)(B). Judge Cogan was not asked—and did not

8

agree—either to reopen discovery or to extend the time within which Dr. El-Ghazaly could move to compel if UVA did not produce the requested documents.[4] *See, e.g.*, Mot. Hr'g Tr. 11–12 ("Look, *if you get something from UVA* and you're going to use it on summary judgment, *then I might reopen discovery* to allow a deposition of the person for UVA. But, Mr. Norinsberg, you're going to have to pay attorneys' fees to do that because it shouldn't be happening this way, as you acknowledge. *Let's see what you get from UVA.*" (emphasis added)). Accordingly, Dr. El-Ghazaly's motion to compel is untimely.

**B.       *The March Subpoena is Overbroad & Unduly Burdensome***

Dr. El-Ghazaly can require UVA's Board of Visitors "to produce designated documents," Fed. R. Civ. P. 45(a)(1)(A)(iii), that are relevant to any party's claim or defense in the E.D.N.Y. action and proportional to the needs of that case, considering the pertinent factors. Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 37(c). Proportionality asks the court to decide "whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Jordan*, 921 F.3d at 189. "When discovery is sought from nonparties, however, its scope must be limited even more." *Id.* "Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery." *Id.*; *see* Fed. R. Civ.

---

[4] Mr. Norinsberg also did not share the scope of what the February subpoena required UVA to produce. He told Judge Cogan that it was "very narrowly-tailored" and "simply [sought] to obtain whatever communications there were from Dr. Kim, which he acknowledged that he did have communications with UVA." Mot. Hr'g Tr. 7. *But see* Pl.'s Ex. A, ECF No. 2-1, at 9 ("Any and all documents related to Tarek El-Ghazaly, M.D., including, but not limited to . . . communications[] and all supporting materials submitted by or on behalf of Dr. El-Ghazaly"). At the hearing, Judge Cogan asked Dr. Kim's counsel, "what is the prejudice for you not having gotten the [Rule 45(a)] notice and for having these subpoenas served so late?" Mot. Hr'g Tr. 10. Counsel said that "[t]here might be documents that are going to continue to be produced" after discovery is closed but before dispositive motions are due. *See id.* at 10–11. Judge Cogan explained, "Mr. Norinsberg has just said that he is only [getting] one document a piece from each one of these [other] subpoenaed [universities]. That's all your likely to see. . . . So I'm not seeing the prejudice." *Id.* at 11. Judge Cogan did not get a chance to review the actual subpoena(s) that Dr. El-Ghazaly served on UVA. *See id.*

P. 45(d)(1). "A more demanding variant of the proportionality analysis therefore applies" when courts evaluate a discovery demand to a nonparty. *Jordan*, 921 F.3d at 189. Pertinent factors include "the requesting party's need" for the information, why that party "cannot obtain the same information, or comparable information that would also satisfy its needs, from one of the parties to the litigation," and whether the demand "seeks information beyond what the requesting party reasonably requires."[5] *Id.* at 189–90. "A nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." *Id.* at 190.

Dr. El-Ghazaly's March subpoena fails on every level. This subpoena seeks:

1.      *Any and all documents related to Tarek El-Ghazaly, M.D., including, but not limited to*, the application form, curriculum vitae, personal statement, transcripts, test scores, communications, *and all supporting materials submitted by or on behalf of Dr. El-Ghazaly* to the University of Virginia School of Medicine.

Pl.'s Br. Ex. G, ECF No. 2-1, at 43 (emphasis added); *see* UVA's Resp. Br. Ex. 4, at 3 (objecting that the italicized language is overbroad and unduly burdensome). Documents related to Dr. El-Ghazaly's candidacy for a fellowship with UVA's School of Medicine are relevant to his stigma-plus claim against Dr. Kim. *See* Pl.'s Br. 7–9. The request for "'any and all' documents related to" Dr. El-Ghazaly, however, "is overbroad on its face." *Cf. Peters v. Balt. City Bd. of Sch. Comm'rs*, Civ. No. WMN-13-3114, 2014 WL 4187307, at *5 (D. Md. Aug. 21, 2014) (defendant's subpoena "seeking 'any and all' documents related to [plaintiff's] employment" was "overbroad on its face"). A subpoena is overbroad when complying with its demands would require the recipient to produce "irrelevant" information. *In re Subpoena for Documents Issued*

---

[5] The person resisting discovery still "bears the burdens of proof and persuasion." *See id.* at 189 n.2 (motion to quash); *accord Berry v. Town of Front Royal, Va.*, No. 5:21cv1, 2021 WL 4895204, at *2, *4 (W.D. Va. Oct. 20, 2021) (motion to compel). "But they are not terribly difficult burdens to meet if the requesting party cannot articulate its need for the information and address obvious alternative sources." *Jordan*, 921 F.3d at 189 n.2.

*to ThompsonMcMullan*, *P.C.*, No. 3:16mc1, 2016 WL 1071016, at \*5 (E.D. Va. Mar. 17, 2016).

"Such a subpoena [also] creates an undue burden because it necessarily imposes greater hardship

than is necessary to obtain proper discovery." *Id.*; *see* Fed. R. Civ. P. 45(d)(1).

As UVA's counsel explained in its objections, the March subpoena's request for "any and

all documents related to" Dr. El-Ghazaly is overbroad and unduly burdensome because it

includes "all documents that contain Dr. El-Ghazaly's name," even if they are irrelevant to his

claims in the E.D.N.Y. action. *See* UVA's Resp. Br. Ex. 4, at 3; *cf. Nallapaty v. Nallapati*, No.

5:20cv470, 2022 WL 1508885, at \*5 (E.D.N.C. May 12, 2022) (party's Rule 34 requests that

"lack[ed] a relevant subject matter limitation" were overbroad). Rule 26(b)(2) requires a court

"on its own" to limit discovery "if it determines that . . . the proposed discovery is outside the

scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii). The March subpoena exceeds

that scope because it is not limited to relevant information. Fed. R. Civ. P. 26(b)(1).

The March subpoena is unduly burdensome for another reason. Two separate times,

UVA's counsel objected that Dr. El-Ghazaly should already have possession of or access to the

documents actually requested. UVA's Resp. Br. Ex. 1 (objections to February SDT); UVA's

Resp. Br. Ex. 4 (objections to March SDT). As written, his Document Request seeks "all

supporting materials *submitted by or on behalf of* Dr. El-Ghazaly" to UVA's medical school.

Pl.'s Ex. A, at 9 (emphasis added); Pl.'s Ex. G, at 43 (emphasis added). This includes Dr. El-

Ghazaly's own "application form, curriculum vitae, personal statement, transcripts, [and] test

scores." *Id.*; *see* UVA's Resp. Br. Ex. 4, at 3. Mr. Norinsberg has Dr. El-Ghazaly's "candidate

file," which presumably contains all "communications" and "supporting materials submitted by

and on behalf of" his client to UVA's medical school. Decl. of Jon Norinsberg, Esq. ¶ 3 (Apr. 3,

2026), ECF No. 2-1, at 3; Pl.'s Ex. G, at 43. He does not explain why UVA, a nonparty, should

11

have to find, review, and produce those same documents. *Jordan*, 921 F.3d at 189–90. In fact, Mr. Norinsberg appears to concede that Dr. El-Ghazaly *does not need* UVA to produce his *entire* "candidate file." *See* Norinsberg Decl. ¶ 3 ("[T]he candidate file possessed by Dr. El-Ghazaly contains no statement made by Dr. Kim to UVA, nor any of UVA's particular reasoning in UVA rescinding its fellowship offer to him beyond noting 'board ineligibility.'"). Yet that is what the March subpoena demands.

Mr. Norinsberg asserts that Dr. El-Ghazaly "offer[ed] to narrow the scope of the Subpoena's request" so that it "sought '*only* his residency candidate file and emails sent by Defendant Dr. Kim to the University.'" Pl.'s Reply 8 (quoting Pl.'s Br. Ex. D, Letter from M. Ben'Ary to A. Hensley (undated), ECF No. 2-1, at 30 (emphasis added)). *See* Pl.'s Br. Ex. H, Letter from J. Norinsberg to A. Hensley (Mar. 19, 2026), ECF No. 2-1, at 46 ("Plaintiff seeks only a narrow and discrete set of documents—specifically, his residency application file and communications from Defendant Dr. Kim to UVA. Plaintiff is not seeking any . . . broader discovery from the University."). *But see id.* at 45 ("The [March] subpoena is identical in all respects to the February 13, 2026 subpoena."). Regardless, Dr. El-Ghazaly asks this Court for an order requiring UVA's Board of Visitors to "compl[y] with" his March subpoena as UVA received it. *See* Pl.'s Mot. 1 (citing Fed. R. Civ. P. 45(d)(2)(B)(i)); Pl.'s Ex. G, at 39, 43. That request is overbroad. *Cf. Jordan*, 921 F.3d at 190.

## C.    *Dr. El-Ghazaly Cannot Rewrite the March Subpoena*

Dr. El-Ghazaly is suing Dr. Kim for retaliation and making stigmatizing comments about him. *See El-Ghazaly*, 2026 WL 111732, at *1–3, *7–8. He alleges that, "[a] few months into [his] urology residency at Stony Brook University Hospital ('SBUH'), the attending physician began making distasteful comments to him about Egyptians and Arabs." *Id.* at *1. Dr. El-

Ghazaly is Egyptian. *Id.* Eventually, he "lodged a discrimination complaint to SBUH's Office of Equity and to the urology program director," Dr. Kim. *Id.* Dr. El-Ghazaly was "terminated in April 2024 with a letter" signed by Dr. Kim and another physician. *Id.* at *8. In April 2025, Dr. El-Ghazaly accepted a fellowship at UVA. *Id.* at *3. "Later that month, UVA rescinded its offer, citing 'board ineligibility' at first, then 'lack of transparency during the interview process.'" *Id.* Dr. El-Ghazaly believes UVA withdrew the fellowship offer because Dr. Kim "communicated stigmatizing statements" about his "professional competence, ethics, and fitness to UVA's risk management/credentialing personnel." *Id.*; *see* Pl.'s Br. Ex. J, Am. Compl. ¶¶ 183–85, ECF No. 2-1, at 100.

In January 2026, Judge Cogan held that Dr. El-Ghazaly plausibly alleged that Dr. Kim uttered "a statement about [him to UVA] that is injurious to his reputation, that is capable of being proved false, and that [Dr. El-Ghazaly] claims is false." *See El-Ghazaly*, 2026 WL 111732, at *8 (other brackets omitted). Mr. Norinsberg tried to discover information about the statement from Dr. Kim directly, but he was unsuccessful. Norinsberg Decl. ¶ 3; Pl.'s Br. 8. He believes that UVA's Board of Visitors has copies of "communications" and "emails" sent by Dr. Kim to UVA that contain Dr. Kim's defamatory statements about Dr. El-Ghazaly. *See* Pl.'s Br. 4, 7–8; Pl.'s Reply 8; Norinsberg Decl. ¶ 3.

The March subpoena demands any "communications[] and all supporting materials *submitted by or on behalf of Dr. El-Ghazaly* to the University of Virginia School of Medicine." Pl.'s Br. Ex. G, at 43 (emphasis added). The phrase "*on behalf of* means in the name of, on the part of, as the agent or representative of." Black's Law Dictionary *Behalf* (12th ed. 2024). Dr. Kim's allegedly false, stigmatizing statements about Dr. El-Ghazaly's professional competence, ethics, and fitness cannot reasonably be said to have been "submitted . . . on behalf of Dr. El-

Ghazaly" to UVA. Pl.'s Br. Ex. G, at 43. In short, Dr. El-Ghazaly never asked UVA's Board of

Visitors to produce the very documents that he now says are at the heart of his motion to compel.

*See* Fed. R. Civ. P. 34(c), 37(a)(3), 45. This Court will not rewrite Dr. El-Ghazaly's March

subpoena for him. *Cf. Sines v. Kessler*, No. 3:17cv72, 2020 WL 3106318, at *8 (W.D. Va. June

11, 2020) (declining to add terms to the parties' stipulated ESI order). His attorney "should have

done that before serving it," *Jordan*, 921 F.3d at 190.

IV. Conclusion

Dr. El-Ghazaly's Motion to Compel, ECF No. 1, is hereby **DENIED**. The Clerk is

directed to close this case.

It is so ORDERED.

ENTER: May 29, 2026

Joel C. Hoppe
U.S. Magistrate Judge

14